May it please the Court. My name is Walter K. Pyle, and I represent Mr. Marcel Davis. The applicable principle of Federal law in this case is that under certain circumstances the State is not permitted to use the confession or statement of a defendant if it incriminates a co-defendant. Even if the jury is instructed, they should not use it to deduce the co-defendant's guilt. More specifically, the rule applies if the First Defendant's confession mentions expressly the Second Defendant. That's the so-called Bruton rule, named after Bruton, University of the United States. That's not this case. That is correct. It does not expressly mention Mr. Davis. However, later cases, particularly Gray v. Maryland, said it does not have to directly implicate the co-defendant. In Gray, you'll recall, it was a they used a blank. But that, in that case, it was clear just from reading the doc, just the language, that something had been explicitly left out. Is that right? In other words, it either said deleted or it said comma and then there was a blank space and another comma, so that anyone looking at this would say, this witness was saying something more than is apparent from the face of this document. It was, but the focus of the opinion was that the reason that it was, should not have been used was not simply that it was apparent something had been left out, but rather the focus was that it implicated Mr. Gray. In other words, yes, it was, yes, it was something that had been left out, but the focus is whether or not the statement and the inferences that can be drawn from it implicate the co-defendant. And we suggest that that is the case in here. What the court said in Gray is, it does not have to directly implicate, a blank doesn't directly implicate anybody. But the question is, when the inferences can be drawn, is the statement powerfully incriminating of the co-defendant. If the jury can immediately recognize that it refers to somebody else, then it probably is powerfully incriminating. And the reason is, what goes through the jury's mind is, who is that someone else? And they, as they say in Gray, they just have to look at the counsel table and they see who's sitting at the counsel table. Counsel, I am looking at page 9 of the government's brief, footnote 2, and I think that is the one that I'm looking at. The statement is by Mr. Puckett? Yes. Is that the statement? Yes. Okay. Can you just show me there how that implicates your client directly or indirectly? Well, about two-thirds of the way down, Mr. Puckett states he did not bring the gun that he used from Phoenix and said, this is the first night I have seen that gun. The implication, I suggest, is that that suggests that somebody else brought those guns from Phoenix. And if the jury looks at the counsel table, they see two other defendants. It's incriminating of both defendants, but... How is it incriminating? It's incriminating because the implication is that somebody else brought the guns from Phoenix. Well, how does that implicate your client? Well, because we have to remember he's not only charged with robbery, he's also charged with assault with a firearm and personal use of a firearm. But I'm from Phoenix. I'm sorry? I'm from Phoenix. How does that implicate your client any more than it implicates you, me? Well, the crucial difference, I think, is that you and me are not sitting at counsel table accused of robbery and assault with a firearm. Well, was there other evidence that your client came from Phoenix? Yes. Mark Oslin testified that he knew both Puckett and Davis in Phoenix, that he had bought two guns and had given them to Davis's roommate. So this could have been Mark Oslin as well. Who brought the guns, except that Mark Oslin's testimony was that last he saw the guns were in Phoenix when he gave them to Davis's roommate. Now, theoretically. He gave them to Davis. There are a lot of people in Phoenix, I guess. Well, there were at least Puckett and Davis. Am I wrong or would your argument push this whole doctrine a little beyond where it's been in the past? I mean, I don't know. Is there any case where you have a document that does not make either any specific reference to the defendant or indicates blanks that something has been left out and where it's held inadmissible because inferences might be drawn by the jury from something stated in the document? I don't recall such a case. But obviously in these types of cases, the circumstances are going to be almost infinite. It's going to be almost impossible. It would be impossible for two cases to be the same. Well, unless the rule is more restricted than you suggest, unless the rule is that there has to be either an explicit mention or something that would make it apparent on its face that something had been left out and the jury would be likely to say, well, obviously it was left out of it, was the name of this other defendant. I'm suggesting that the rule, there is not a requirement that the confession or statement show that something's been left out, but rather if it's, if the statement incriminates, and the courts say incriminates powerfully, the co-defendant. It doesn't directly. I mean, the statement by the man that he didn't bring the guns from Phoenix doesn't directly implicate anyone. It's really an exculpatory statement on his part. It is exculpatory, and it doesn't directly implicate anybody. But remember that Gray v. Maryland says this case, meaning Gray, differs from directly accusatory evidence because it does not point directly to a defendant at all. That's Gray. So there's not a requirement. When the court disguided Gray, it did not require that it directly point to a defendant. It can point inferentially. And the inferences, I suggest, are found in the prosecutor's statement to the jury, where he talks about, remember, remember the testimony of Mark Oslund and how he gave the guns to Davis's roommate in Phoenix. And then he says, and these guns then, this gun, one gun ends up in the backseat of the car in the same car that Marcell Davis. And what he says was, how do you think that gun got there? And the implication, I suggest, is Davis brought it from Phoenix along with the other guns. Once you get Oslund, if you believe Oslund, and he says, I'm in Phoenix and I deliver the guns to a room, to a friend of Davis's roommate. Am I right so far? I believe he delivered it to Davis's roommate. So that puts Davis and the co-defendant in Phoenix. And it puts the guns in Phoenix, right? Yes. And the guns in close proximity to Davis. And then the guns wind up, both of the guns wind up being retrieved by the police in the getaway car. Well, at least one of the guns does. Well, one in the getaway car and one in the water nearby. Yes. Now, that was described as a Ruger. Okay. What difference does it make who brought the guns from Phoenix to the scene of the crime? When you've got these defendants in Phoenix and you've got the guns in Phoenix and they wind up at the scene of this escape car, who cares who brought the guns? Well, I think a jury would take that into consideration in deciding whether it was Davis who had the gun. You remember, for example, what — That isn't the test, though, is it? I mean, just because this statement is consistent with the fact that Davis — with the hypothetical that Davis brought the guns doesn't — what does that get you? That's so broad, you couldn't — you couldn't introduce the statement at all, even against the co-defendant. Well, I suggest that it's not that — that it's not that broad, that it is — that it is — Well, what's the defining principle? The defining principle is that if it — that if a jury could hear that statement and tie it into somebody sitting at the counsel table, then it's powerfully incriminating. So the result would be different if the defendant had been obstreperous in court and had been removed from the courtroom and wasn't sitting at a counsel table. Well, the jury probably would still know he was on trial, and I suspect it would probably still be — still be incriminating. But at which one of the — the three of them on trial? Well, at — at one point, you could say it implicates both the co-defendants. But with Oslin's testimony, as the — as the prosecutor pointed out in final argument, the implication is that it's Davis. You have used all your time. Thank you very much. Good morning, Your Honors. May it please the Court. I'm Jeffrey J. Cook, Deputy Attorney General for Respondent at Pelley, the Warden, and the people of the State of California. Your Honors, our position on this case from the very start has been that under the consistent with clearly established Federal laws put down by the United States Supreme Court, and that it applied that law to the facts of this case very clearly. Just — just so we're clear as to this — who these people were in this multiple defendant trial, we have three people on trial. We have Mr. Puckett, who is the one who gave this incriminating statement to himself. We have Mr. Pinckney, who is behind the wheel of the getaway car. And we have Mr. Davis, the appellant in this case, who's in the backseat of the getaway car when apprehended by the police. Now, the Supreme Court has been very clear as to what the law is in this area over time. It started with Brewton, of course, which said you can't have in a multiple defendant trial one defendant making an incriminating statement that clearly implicates another defendant. You can't do that. In Richardson v. March, the Supreme Court modified that a little bit and said, well, if the statement is redacted, that might be okay. However, it wasn't until 1998 that the United States Supreme Court clarified if it's okay to put in a redaction or a neutral pronoun. I would point out, respectfully to the Court, that in the case of People v. Fletcher, which was a 1996 case, the California Supreme Court anticipated Gray v. Maryland, and they already fixed it in California. So the California Court of Appeal, when analyzing this case, has the benefit of the trilogy of Supreme Court cases and also its own California jurisprudence by the California Supreme Court. Now, the footnote that was left hanging, excuse me, in the Richardson case that was Bruton does apply to, quote, statements that, despite redaction, obviously refer directly to someone, often obviously to the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial. So I would suggest looking at this case by way of the invitation, taking the invitation of the Supreme Court, and looking at it. Say that the trial started. The prosecutor and defendants' counsels waived opening statement. The prosecutor got up and he called his first witness, Detective Petty, who is the one who took the incriminating statement from Mr. Puckett. And assuming there was no foundational objection, he calls Detective Petty to the stand and said, Detective Petty, what did Mr. Puckett tell you? And as there was here, there was a found – there was an objection by appellants' counsel saying, wait a minute, that's hearsay as to my client. Mr. Pinckney's attorney also tried to voice an objection, but the prosecutor said, no, no, no, this is only being offered for Mr. Puckett. So Mr. Puckett or Detective Petty testifies and basically, as Judge Schroeder, you mentioned in the footnote on page 9 of our brief, Puckett basically confessed he'd never been involved in a robbery before. He didn't know about the robbery until that night. Or the night before it happened. He admitted he was the robber who stood in front of the grocery store waving the gun. He said he didn't bring the gun from Phoenix. And he stated he didn't want to hurt anyone and he was sorry for what he had done. Now, there's a few more questions on direct. There's brief cross-exam. The jury's about to go out for a break when the judge says, oh, okay, before you go out for a break, let me tell you, you can't use that for anybody but Mr. Puckett, the guy who mentioned it. If you were able to take a poll of the jury at that point and say, ladies and gentlemen of the jury, what do you think of that statement? I would think the jury would look at whoever's asking that question and go, well, we haven't heard anything. All we know is that this Mr. Puckett was involved in a robbery, apparently. What do you think about the other two defendants? Search us. We don't know. There was nothing said. There was no reference to them whatsoever. Nothing along those lines implicated them. So this statement by Mr. Puckett offered by the prosecution was not, to quote counsel, powerfully incriminating. Facially, it was nothing. Now, as the case develops, certainly there's that information about the guns coming from Phoenix and that there were some other things that incriminated them. But, of course, most powerfully, they're in the getaway car. They're found. Well, what, under what, how do we measure the degree of directness of the implication? Is it as of the time that the jury hears the statement or is it as of the time that it's going to the, that they get the case to decide it? Well, Your Honor, I think it's measured really independently of when it's offered. As the Supreme Court in Gray said, it could be offered the very first thing. And what you're looking at is it's on its face. What does it implicate? If it's down the line, then the jury puts it together and goes, oh, now I understand that. Hmm, okay, they were found in the car together. Hmm, I bet you they were involved, and I bet you when he said he didn't come from Phoenix and we have the testimony from Mr. Oslin, that implicates it. Okay. So you're saying that under, your position is that under the Supreme Court decisions, you look at the statement itself? Yes, Your Honor, clearly. You don't look at all the rest of the evidence to see when the jury gets the case, it may, how it may fit that into the rest of the evidence? No, Your Honor, because, of course, that's what the prosecution wants. Yes. The prosecution wants this to be a complete package, so at the end of the day, the jury thinks, well, we've decided this beyond a reasonable doubt. It all fits. But I would suggest in this case the most powerful evidence, of course, is the fact that the defendants are all found together in close proximity of the getaway car. Mr. Puckett's in Mission Bay dumping his Ruger pistol, and the other two are in the vehicle. So I would respectfully submit to the Court that the California court of appeal got this exactly right, that there's absolutely no problem with that whatsoever, and I would respectfully ask the Court to affirm the district court's conclusion to that effect. Thank you. Thank you, Your Honor. The case just argued is submitted for decision. We'll hear the next case for argument is
judges: Schroeder, Friedman , Leavy